Hinds-Radix, J.,
dissents, and votes to reverse the judgment of conviction, on the law, grant that branch of the defendant’s omnibus motion which was to suppress physical evidence, dismiss the indictment, and remit the matter to the Supreme Court, Kings County, for further proceedings consistent with CPL 160.50, with the following memorandum, in which Hall, J., concurs: The defendant’s conviction of criminal possession of a weapon in the second degree was based on an encounter on a public street during which the defendant was stopped and frisked by the police and a gun was seized from his person.
On February 19, 2011, at about 7 p.m., Officer Mourad and two other officers were patrolling a high crime area known as an Impact Zone. The area was a residential neighborhood consisting of apartment buildings and private homes. The officers were in uniform, in a marked police van. As the van proceeded north on New York Avenue at five miles per hour, Mourad observed two men walking northbound. Mourad testified at the suppression hearing that he “saw it was two males.” The man closest to the van, later identified as the defendant, looked back at the van and made eye contact with Mourad. Mourad told the driver of the police van to stop so he could “zoom in on him.” The van came to a stop approximately 10 to 15 feet away from the men.
Mourad noted that the defendant was wearing a T-shirt, a hoodie which was zipped up, and a black leather jacket which was unzipped and came below his waist. Mourad testified at the suppression hearing that “[immediately following the eye contact” the defendant “went to . . . his right-hand side of his waistband closest to me as he’s possibly tucking something or trying to hide an object.” Mourad concluded that “he’s possibly concealing a weapon or something of such matter.” Mourad *1067 claimed that, as the defendant adjusted his waistband, “he pulled his jacket back and caused his hoodie to tighten on him which made me able to see” a “rectangular shape” through the defendant’s clothing. Mourad described the rectangular shape as “possibly” the “outline” of the handle of a firearm.
Mourad exited the van and said “police” two to three times, but the defendant kept walking, and sped up his walk. Meanwhile, the defendant’s companion was screaming, “why you stop my friend.” Mourad grabbed the defendant, placed one hand on the defendant’s chest, and one hand on his waist, and felt what appeared to be the handle of a firearm. The defendant responded “You got me. I’m not going to fight you.” The defendant was placed under arrest, and a 9-millimeter firearm was recovered from under the defendant’s hoodie.
At the conclusion of the suppression hearing, the Supreme Court denied that branch of the defendant’s omnibus motion which was to suppress physical evidence based upon a finding that Mourad’s testimony justifying the stop and frisk was credible. The court rejected the defendant’s argument that it was physically impossible for Mourad to see what he claimed to have seen, at night, from 10 to 15 feet away. However, those findings should not end our inquiry.
In People v De Bour (40 NY2d 210 [1976]), the Court of Appeals established a graduated four-level test for evaluating the propriety of police encounters when a police officer is acting in a law enforcement capacity (see People v Moore, 6 NY3d 496, 498-499 [2006]). The first level permits a police officer to request information from an individual, and merely requires that the request be supported by an objective credible reason, not necessarily indicative of criminality (see People v De Bour, 40 NY2d at 223; People v Moore, 6 NY3d at 498). The second level, known as the “common-law right of inquiry,” requires a founded suspicion that criminal activity is afoot, and permits a somewhat greater intrusion short of a forcible seizure (see People v Moore, 6 NY3d at 498-499). The third level permits a seizure, meaning that a police officer may forcibly stop and detain an individual, based upon a “reasonable suspicion” that the individual is committing, has committed, or is about to commit a crime (People v De Bour, 40 NY2d at 223; see People v Moore, 6 NY3d at 499). Finally, the fourth level authorizes an arrest based on probable cause to believe that a person has committed a crime (see People v Moore, 6 NY3d at 499; People v De Bour, 40 NY2d at 223).
Here, according to Officer Mourad, he initially decided to “zoom in on” the defendant because he was male and they made *1068 eye contact. Since the defendant was walking on a public residential street in the early evening, the police did not even satisfy the first level of police encounters, which requires an objective credible reason for requesting information (see People v McIntosh, 96 NY2d 521, 526 [2001]).
The actions of the defendant in response to the police encounter did not justify the defendant’s forcible stop, which required a “reasonable suspicion” that an individual is committing, has committed, or is about to commit a crime (see Matter of Shakir J., 119 AD3d 792 [2014]). The so-called outline of the handle of a firearm was not described in detail (see People v Henderson, 85 AD3d 663 [2011]). Rather, it was described as a “rectangular shape,” which would fit the description of many common objects, including wallets and cell phones. Officer Mourad’s description of a rectangular shape in the area of the defendant’s waistband is no more informative than the description of a “bulge” in the waistband area, which this Court has repeatedly ruled is not sufficient to justify a pat-down search (see People v Harris, 122 AD3d 942, 945 [2014]; People v Kennebrew, 106 AD3d 1107, 1109 [2013]).
The defendant had the right to be left alone. Therefore, the fact that the defendant walked away when the police called upon him to stop did not raise the level of the encounter (see People v Moore, 6 NY3d at 501; Matter of Shakir J., 119 AD3d at 795).
Accordingly, the stop and frisk of the defendant was unlawful, and that branch of the defendant’s omnibus motion which was to suppress physical evidence should have been granted.
In view of the foregoing, I vote to reverse the judgment of conviction, on the law, grant that branch of the defendant’s omnibus motion which was to suppress physical evidence, dismiss the indictment, and remit the matter to the Supreme Court, Kings County, for further proceedings consistent with CPL 160.50.